UNITED STATES DISTRICT COURT

DISTRICT OF NEW HAMPSHIRE

Steven M. Notinger, Trustee
in Bankruptcy of Simply Media, Inc.,
    Plaintiff

    v.                                      Civil No. 08-cv-05-SM
                                            Opinion No. 2008 DNH 188

Christina Brown, individually and as
Trustee of First Marcus Trust,
    Defendant


**O R D E R**


This case arises out of a business operation that had all the earmarks of an old-fashioned investment scam. It was run by the defendant, Christina Brown, and her husband, Deaver Brown. The scheme proved to be highly effective, yet it was quite simple.

First, the Browns formed Simply Media, Inc. Then, armed with apparently bogus profit and loss statements prepared by Deaver, a few sample products, and a compelling yarn of historical success woven by Deaver, the couple approached well-to-do friends and acquaintances and offered them the "opportunity" to own a portion of the company.

Seduced by the fictitious profit and loss reports, and comforted by Deaver's personal charm and his tales of enormous

sales through substantial retailers like Target, Walgreens, and Best Buy, investors parted with more than $1.6 million. The Browns used that money to pay for all manner of personal expenses including, for example, personal dry cleaning bills, individual memberships at an athletic club, and payments on the mortgage loan on their home. <u>See generally</u> Exhibit A to plaintiff's amended complaint. Not surprisingly, the capital was soon spent and the supply of gullible investors dried up. Simply Media was put into bankruptcy.

The trustee in bankruptcy proceeded to inventory the corporation's assets and liabilities. That effort was, however, exceedingly difficult, as he soon discovered that the Browns deliberately and systematically destroyed nearly every relevant corporate document they ever received or generated – from checking account statements, to a list of investors, to the company's (claimed) inventory of products, to a statement of its (claimed) retail sales channels. Not surprisingly, the Browns provided no help. Eventually, however, the trustee was able to uncover a trail of checks written on the corporation's accounts — a trail that led to discovery of the Browns' use of company bank accounts as their own personal funds. This litigation to recover assets belonging to the company that Christina Brown used for personal expenses ensued.

Following a four-day jury trial, a verdict in favor of the trustee was returned on both claims that were submitted. Defendant now moves to set aside the jury's verdict (document no. 82), to set aside the jury's award of damages (document no. 81), and to reconsider its instructions to the jury on spoliation of the evidence (document no. 83).  Plaintiff objects.

## Background

Although the trustee's amended complaint advanced fifteen claims against nearly a dozen defendants, two claims were presented to the jury.  In count one, plaintiff asserted that Christina Brown, both individually and in her capacity as trustee of the First Marcus Trust (title holder of the Browns' residence in Lincoln, Massachusetts), fraudulently transferred assets of the debtor in bankruptcy (Simply Media, Inc.) and diverted them to personal use.  In the second count (count 15 of the amended complaint), plaintiff claimed that Christina Brown participated in a civil conspiracy whose unlawful object was to transfer money out of Simply Media in order to hinder, delay, or defraud its creditors.

As noted above, the jury returned a verdict in favor of the trustee on both counts and awarded damages as follows:

```
Count one (fraudulent transfer)

    Christina Brown, individually:     $   871,613.76

    Christina Brown, trustee:          $   231,894.84

Count Two (civil conspiracy)

    Christina Brown:                   $2,968,071.00
```

Jury Verdict Form (document no. 68). Brown argues that the trustee failed to introduce sufficient evidence to support that verdict. And, says Brown, even if the evidence was adequate to support a finding of liability, it was insufficient to support the jury's sizeable damage awards.

Two of Brown's motions can be resolved quickly. Her motion to reconsider the court's instructions to the jury on spoliation of the evidence is denied (presumably Brown is actually seeking a new trial based upon prejudicially defective jury instructions, since there is no point in "reconsidering" instructions already given and relied upon). The spoliation issue was thoroughly addressed by the parties during the course of these proceedings and the court considered and ruled on the matter; further discussion is unwarranted.

Brown's motion to set aside the jury's verdict on liability is also denied. The evidence plaintiff introduced at trial was

more than sufficient to warrant the jury's conclusion that Brown fraudulently transferred assets of the company and diverted them to her personal use.  That evidence was also sufficient to sustain the jury's verdict on the civil conspiracy count.

The jury's award of damages on the civil conspiracy count is, however, problematic.

### Standard of Review

"In reviewing an award of damages, the district court is obliged to review the evidence in the light most favorable to the prevailing party and to grant remittitur or a new trial on damages only when the award 'exceeds any rational appraisal or estimate of the damages that could be based upon the evidence before it.'" Eastern Mt. Platform Tennis, Inc. v. Sherwin-Williams Co., 40 F.3d 492, 502 (1st Cir. 1994) (quoting Kolb v. Goldring, Inc., 694 F.2d 869, 872 (1st Cir. 1982) (emphasis added)).  So, to be entitled to remittitur or a new trial, Brown must establish that, in light of the evidence introduced at trial, "the damage award is grossly excessive, inordinate, shocking to the conscience of the court, or so high that it would be a denial of justice to permit the award to stand." Forgie-Buccioni v. Hannaford Bros., Inc. 413 F.3d 175, 183 (1st Cir. 2005) (citing Havinga v. Crowley Towing & Transp. Co., 24 F.3d

1480, 1484 (1st Cir. 1994)). It is the court's task "to determine the <u>maximum dollar amount</u> that is supported by the evidence." <u>Soto-Lebron v. Federal Express Corp.</u>, 538 F.3d 45, 69-70 (1st Cir. 2008) (emphasis in original).

## Discussion

As part of his case, the trustee introduced evidence (in the form of cancelled checks drawn on Simply Media's accounts) demonstrating, beyond any reasonable doubt, that Brown diverted more than $1,103,000 from Simply Media to pay for personal, family, and trust expenses (she being the apparent beneficiary as well as Trustee of the First Marcus Trust). Accordingly, in returning a verdict for the trust, the jury apportioned damages between Brown in her individual capacity (i.e., approximately $871,000), and Brown in her capacity as trustee of the beneficial trust (i.e., approximately $232,000). As to count one of the amended complaint (fraudulent transfer), then, the jury's verdict and its award of damages is fully supported by the evidence.

The rationale behind the jury's award of damages on the civil conspiracy count is less apparent. As to that count, the jury returned a verdict for the trustee in the amount of $2,968,071. But, the court is unable to discern how the evidence introduced at trial could reasonably support such an award. And,

perhaps more importantly, the trustee has failed to point to evidence in the record which might support that amount.

In an effort to avoid remittitur, the trustee argues that, in addition to introducing the cancelled corporate checks, he elicited testimony supportive of his case from Brown's husband and alleged co-conspirator, Deaver. Among other things, Deaver Brown testified that investors parted with approximately $1,648,000 to capitalize Simply Media. Thus, says the trustee, Brown and her co-conspirator (Deaver) took at least that amount of money out of Simply Media in order to hinder, delay, or defraud its creditors. Plus, says the trustee, Simply Media's bankruptcy schedules list creditors totaling $521,000 in claims. According to the trustee, that amount should be added to the sums invested in Simply Media ($1,648,000), to give a total of $2,169,000. The additional $800,000 awarded by the jury on the civil conspiracy count can be explained, he argues, by "taxes, interest, costs, and expenses of bankruptcy administration (through _two_ trials)." Plaintiff's memorandum (document no. 87) at 5. The court disagrees.

First, there was no evidence introduced at trial related to "taxes, interest, costs, and expenses" incurred by Simply Media's bankruptcy estate. To the extent the jury included such factors

in its award, it was based on speculation and cannot stand. Moreover, the trustee's suggestion, that the $1,648,000 invested in the company should be added to the amounts shown on the company's bankruptcy schedules as owed to unsecured creditors, appears to constitute double counting of the same funds. If slightly more than $1.6 million was invested in the company by unsecured creditors (assuming the "investors" are properly viewed as unsecured creditors), then perhaps that amount should have been reflected on the company's bankruptcy schedules, rather than the $521,000 figure that was actually reported. There does not, however, appear to be any good reason why those two figures should be added together – at least the trustee has not offered one.

Finally, it is important to remember the precise character of the claim asserted against Brown in count two: civil conspiracy aimed at diverting Simply Media's funds to pay Brown's personal expenses, thereby hindering, delaying, or defrauding Simply Media's creditors. The nature of that cause of action necessarily limits the type of damages the trustee may properly recover. The damages sustained by the bankruptcy estate as a result of the charged civil conspiracy proved in this case were entirely economic and, upon proper proof, subject to straightforward calculation. The jury's award of damages cannot

include sums intended to compensate the bankruptcy trustee for other harm or injury not pled or tried.

Of course, given the Browns' conscious and deliberate destruction of all corporate records, it was difficult for the trustee to find evidence supportive of his claims. Nevertheless, he did so to a remarkable degree. And, viewing that evidence in the light most favorable to the jury's verdict, still, the court cannot discern how the jury could (without engaging in impermissible speculation) return a verdict on the civil conspiracy count in excess of $1,648,000 – the amount Deaver Brown testified he raised from investors. There was a suggestion, but scant evidence, that more was raised, and evidence produced no doubt satisfied the jury that rampant fraud had been perpetrated. But, again, insufficient evidence was offered tending to establish that Brown's fraud resulted in greater than $1,648,000 in economic harm.

Because it was not in Deaver Brown's interest to be entirely forthcoming when discussing the amounts invested in Simply Media, the jury could rationally and reasonably conclude that the roughly $1.6 million referenced by Deaver was, if anything, an understatement of the total funds actually invested in the company. Additionally, because the evidence painted a picture of

Simply Media as little more than a sham corporation with few, if any, real customers, virtually no inventory of products and/or operational expenses, and laughably fictitious "accounting records" obviously fabricated by Deaver, the jury could have reasonably concluded that very little of the money invested in Simply Media was actually used to fund legitimate business operations, and what little was used for those purposes should be the responsibility of Brown.  The jury could have also reasonably concluded that the minimal expenditures made by Brown to keep up the appearance that Simply Media was a legitimate business were properly viewed as fraudulant.  Accordingly, the jury could have reasonably concluded that Christina and Deaver Brown conspired to divert, from corporate to personal use, all of the $1,648,000 Deaver said he raised from investors, all in an effort to hinder, delay, and/or defraud creditors of the company.  But, any award in excess of that amount on the civil conspiracy claim is not supported by evidence of record.

### Conclusion

As noted above, plaintiff alleged that Christina Brown conspired with others to transfer assets of Simply Media to hinder, delay, or defraud creditors.  Plainly, she could not have fraudulently transferred more than Simply Media raised.  And, viewed in the light most favorable to the jury's verdict, the

10

evidence of record supports the conclusion that Simply Media's assets totaled $1,648,000.  An amount any larger than that would necessarily be based upon speculation, not on evidence presented.

In light of the foregoing, the court holds that the jury's award of nearly $3 million in damages on plaintiff's civil conspiracy claim is plainly in excess of that which is properly supported by the evidence.  Accordingly, the court shall order a new trial, limited exclusively to the issue of damages on the civil conspiracy claim, <u>unless</u> plaintiff consents to the entry of judgment in his favor on that count in the reduced amount of $1,648,000.00.  <u>See</u> <u>Hetzel v. Prince William County</u>, 523 U.S. 208 (1998).  <u>See generally</u> 11 C. A. Wright, A. R. Miller & M. K. Kane, <u>Federal Practice and Procedure</u> § 2815 (2d ed. 1995).  If plaintiff agrees to such a reduced judgment, Brown's liability (in her individual capacity and in her capacity as trustee of the First Marcus Trust) will be as follows:

Count one (fraudulent transfer)

    Christina Brown, individually:    $  871,613.76

    Christina Brown, trustee:    $  231,894.84

Count two (civil conspiracy)

    <u>Christina Brown:              $1,648,000.00</u>

    Total Damages             $1,648,000.00

Of the $1,648,000.00 awarded in total damages,[1] Christina Brown, in her personal capacity, is liable for the entire amount.  In her capacity as trustee of the First Marcus Trust, Brown is jointly and severally liable for $231,894.84.

Defendant's motion to set aside the jury verdict with regard to damages (document no. 81) is granted in part and denied in part, as discussed above.  Her motion to set aside the jury verdict (document no. 82) and her motion for reconsideration (document no. 83) are denied.

If plaintiff elects to accept a reduced damages award of $1,648,000 on his civil conspiracy claim he shall, on or before October 31, 2008, file a statement with the court accepting a remittitur to that amount, whereupon the court will enter judgment in his favor and against Christina Brown (both individually and as trustee), as outlined above.  Should plaintiff fail to file a timely statement agreeing to remittitur, the court will set the case down for a new trial limited exclusively to the issue of damages on plaintiff's claim that

---

[1] Plaintiff implicitly suggests that the damages awarded by the jury on counts one and two should be added together.  That is incorrect.  In light of the evidence introduced at trial, the trustee is entitled to recover a total of $1,648,000 in damages from Christina Brown, apportioned between her individual and trustee capacities, as set forth above.

Christina Brown conspired to transfer money of Simply Media in order to hinder, delay, or defraud its creditors.

**SO ORDERED.**

_____
Steven J. McAuliffe
Chief Judge

October 6, 2008

cc:  Geraldine L. Karonis, Esq.
     Stephen F. Gordon, Esq.
     Todd B. Gordon, Esq.
     Andrew G. Bronson, Esq.
     James V. Tabner, Esq.
     Douglas A. Grauel, Esq.
     Angelika Thumm, pro se
     Katherine San Filippo, pro se
     Middlesex Savings Bank, pro se
     Dudley C. Goar, pro se
     Bruce A. Harwood, Esq.